JIM BOB CROW v. THE STATE.

*No. 1169.    Decided March 10th, 1897.*

**1.    Murder—Comparison of Handwriting—Expert Opinion Evidence.**

On a trial for murder, where a bank officer, as an expert in handwriting, was shown a genuine specimen of the handwriting of defendant for comparison with a note not signed, but claimed by the State to have been written by defendant; and the expert testified, that, as an expert, "I can not give an opinion as to whether they (the two writings) were written by the same person, and can only say, that there is considerable similarity in some of the letters in some of the words." Held: Insufficient testimony upon which to admit said note in evidence. Before it was legally admissible, the proof, that defendant wrote it, should have been reasonably certain.

**2.    Same—Charge on Circumstantial Testimony.**

On a trial for murder, where the defendant on trial was alone charged with the crime, and the court, in the charge on circumstantial evidence, instructed the jury that such testimony "must be of a conclusive nature, leading on a whole to a satisfactory conclusion and producing, in effect, a reasonable and moral certainty that

the defendant, and no other person, committed the offense charged." Held: The instruction that, "the defendant, and no other person, committed the offense charged," was equivalent to instructing them that the facts and circumstances must be inconsistent and incompatible with the defendant's innocence. This charge might not be correct in all cases. See, opinion in extenso on this question.

APPEAL from the District Court of Milam. Tried below before Hon. W. G. TALIAFERRO.

Appeal from a conviction for murder in the first degree; penalty, imprisonment for life in the penitentiary.

This is a second appeal taken from a judgment of conviction assessing the punishment at a life term in the penitentiary in this case. See, first appeal, Crow v. State, 33 Tex. Crim. Rep., 264. The statement of facts is voluminous. In the main, the salient features are the same as those found recited in the opinion on the first appeal, and, in view of the matter upon which this appeal is disposed of, and which is fully stated in the opinion below, a further statement of the case is unnecessary.

*E. B. Muse* and *Henderson & Streetman*, for appellant, filed an able brief and also an argument upon the facts to show, that the evidence established an alibi for defendant, and was otherwise insufficient to support a conviction. Their propositions in the brief, relating to the questions discussed in the opinion below, were: The court erred in admitting in evidence, over defendant's objections, the scandalous note, which was carried by J. W. Crow, father of defendant, to B. F. White, father of the murdered girl, about a year before the murder.

The defendant objected to its introduction on the ground, (1) because no sufficient predicate had been laid for its introduction; (2) it was not shown that defendant wrote it, or had any connection with it.

The State undertook to introduce the note on the ground that it was written by the defendant, and sought to prove that defendant wrote it by comparison of the handwritting with another paper proven to have been written by defendant, and for the purpose of making the comparison, the testimony of John B. McLane, as follows, was offered:

"I am now engaged as vice-president of the First National Bank of Cameron. I have been in the banking business some time over three years.

"Question.—Is your business such as to enable you to distinguish handwriting if familiar with it?

"Answer.—I do not claim to be an expert, but think I can distinguish handwriting of different persons by comparison.

"I keep a book of signatures, and if a person should have money in the bank and draw a check on it, if I was not familiar with his signature I would compare the signature on the check with the signature of the party in the book, and would either pay the check or decline to pay it, according to my opinion as to the identity of the signatures. I was cashier of the bank for two years. My duties are now about the same as when I was cashier. I was in the lumber business for ten years be-

fore I went into the bank, and before that I was clerk in a general merchandise store for ten years."

State then offered to have the witness state his opinion as to whether the same person wrote the piece in the album identified by Mrs. Nels and the note found at Crow's gate, to which defendant objected, and the court overruled the objection, to which ruling of the court defendant, in open court, excepted, and said witness, over defendant's objection, testified as follows:

"There is a similarity in the formation of some of the letters. Perhaps the two instruments were written in a different position. There is more similarity in the small letters than in the large. I cannot give an opinion as to whether the same party wrote both instruments. I can only go so far as to say that there is quite a similarity in the formation of some of the letters in some of the words. If the papers were just casually handed me, and I looked at them, not as an expert, I would not say that the same person wrote them. As an expert I cannot give an opinion as to whether they were written by the same person, and can only say that there is considerable similarity in some of the letters in some of the words."

Our contention is that the testimony of McLane, as an expert, does not lay the predicate for the introduction of the note. We also contend that a comparison of handwritings cannot be made in the first instance by the jury, but that a prima facie case of similarity of handwriting must be made by the testimony of experts before the writings are submitted to the jury.

The court erred in its charge on circumstantial evidence.

The charge complained of is as follows:

"In this case the State relies for a conviction upon circumstantial evidence alone, and in order to warrant a conviction upon such evidence, each fact necessary to establish the guilt of the accused must be proved by competent evidence beyond a reasonable doubt, and the facts and circumstances proven must be consistent with each other and with the guilt of the accused, and taken together must be of a conclusive nature, leading, on the whole, to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty that the defendant, and no other person, committed the offense charged, and unless the evidence does so you will acquit the defendant."

The grounds of objection to said charge are:

1. It does not tell the jury that the facts and circumstances must be inconsistent and incompatible with defendant's innocence. The force of this objection is emphasized by that part of the charge which tells the jury that the "facts and circumstances must be consistent with each other, and with the guilt of the accused." Ought not this court to have told the jury in the same connection that the facts and circumstances must be incompatible with defendant's innocence?

2. Because the said charge does not tell the jury that the facts and

circumstances must exclude every other reasonable hypothesis than that of the defendant's guilt.

Is it not just as much the law of circumstantial evidence "that the facts and circumstances must be inconsistent with defendant's innocence, and must exclude every other reasonable hypothesis or conclusion than that of defendant's guilt," as it is that the "facts and circumstances must be consistent with each other and with the guilt of the accused?"

To how easy a task did the court invite the jury! All they had to do was to follow along through the evidence in search of consistencies, culling out the harmonies and matching them together, and casting aside the inconsistencies without deigning to give them a moment's consideration. Does this not present one side of the case only, and that the most unfavorable side for this defendant? Ought not the jury to have been further told that the evidence must be incompatible with defendant's innocence, and must exclude every other reasonable hypothesis or conclusion than that of his guilt? Would not this direction make the charge complete? And was not the charge unfinished and incomplete without it? That the omission was a material injury to the defendant will be apparent from a consideration of the testimony—full of facts incompatible with guilt, and compatible with innocence, and at least three reasonable hypotheses than that of defendant's guilt, viz:

1.   That E. M. Cast may have murdered the girl, or caused her to have been murdered;

2.   That the man who passed Blocker's house on the night of the murder had committed the deed;

3.   That defendant's alibi was true.

But the jury was not required to exclude these, or any other reasonable hypothesis which might arise from the evidence. They were only required to find that the "facts and circumstances were consistent with each other, and with defendant's guilt."

In cases of Jones v. State, 34 Tex. Crim. Rep., 490; Smith v. State, 35 Tex. Crim. Rep., 618, this Honorable Court has laid down the rule governing charges on circumstantial evidence, in this particular, as follows:

"A charge on circumstantial evidence is not complete unless it contains in substance the proposition that the circumstances must exclude every other reasonable hypothesis except that of defendant's guilt."

*Mann Trice*, Assistant Attorney-General, for the State.

[No brief found with the record.—Reporter.]

HURT, PRESIDING JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life, for killing Miss Mollie White; hence this appeal is prosecuted. This was a most atrocious and revolting murder. The testimony against the appellant was circumstantial. Some facts tended

strongly to incriminate him, and other facts tended strongly to excul-
pate him. It was very necessary and of the highest importance that
the trial should be a fair, impartial legal trial, because, if the jury
should take an unfavorable view of the evidence for the appellant, this
court could not have reversed the judgment because of the insufficiency
of the evidence. But, as above stated, strong circumstances and proof
tending to show an alibi were introduced in behalf of the appellant.
Upon the trial, nothing that was calculated to unjustly prejudice appel-
lant before the jury should have been permitted. Over the objections
of the appellant, the State was permitted to introduce in evidence a cer-
tain note or letter, as follows: "Well, Bob Crow, I have f—k your girl;
I set in for that. I have f—k Mollie White, and you can't goe with her
any more. I can tell White's folks enything, an tha believe me. Mollie
leave the window open." This letter contained no signature. Counsel
for appellant objected to the introduction of this letter, "because no
sufficient predicate for its introduction had been laid, and because it was
of a character calculated to highly prejudice the jury against the defend-
ant, and because it was not shown that defendant had any connection
whatever with said note and the writing thereof, and that the same was
found more than one year before the alleged murder." As a predicate
for the introduction of this note or letter in evidence against the appel-
lant, the State introduced J. B. McLane (president of the First National
Bank of Cameron), who had been in the banking business for something
over three years. McLane states that he did not claim to be an expert,
but that he could distinguish handwriting of different persons by com-
parison. The State had in evidence a specimen of the handwriting of
the appellant, and, when witness made the comparison between the lat-
ter and the note referred to above, he said: "There is a similarity in the
formation of some of the letters. Perhaps the two instruments were
written in a different position. There is more similarity in the small
letters than in the large. I cannot give an opinion as to whether the
same party wrote both instruments. I can only go so far as to say that
there is quite a similarity in the formation of some of the letters in
some of the words. If the papers were just casually handed me, and I
looked at them, not as an expert, I would not say that the same person
wrote them. As an expert, I cannot give an opinion as to whether they
were written by the same person, and can only say that there is consid-
erable similarity in some of the letters in some of the words." We are
of the opinion that this was not sufficient testimony upon which to ad-
mit the letter or note. The damaging effect upon the rights of the ac-
cused in this case from the introduction of this note is very certain and
unquestionable. The proof that he wrote it should have been reason-
ably certain. Such proof was not made in this case. Concede every-
thing stated by McLane to be true, still this would not warrant the ad-
mission of the note in evidence. He simply says that there was a sim-
ilarity in some of the small letters in the note to those in the handwrit-
ing conceded to be the genuine handwriting of the defendant, but he

does not state that it was his opinion that Crow wrote that note. We are of opinion that the court erred in admitting this note in evidence and, under the peculiar circumstances of this case, we think it reversible error. As above stated, this conviction depended alone upon circumstantial evidence, two theories being strongly presented by the evidence—the theory of the State, tending to show appellant guilty; and the theory of the defendant tending to show his innocence. It was the duty of the court to charge the law clearly and fully applicable to such a case, to-wit: a case of circumstantial evidence. Was this done in this case? We are of opinion that it was. Appellant, at the proper time, interposed objections to the charge of the court, "because it does not instruct the jury that the facts and circumstances must be inconsistent and incompatible with the defendant's innocence." The jury were instructed in the charge that "in order to warrant a conviction upon such evidence, to-wit: circumstantial evidence, each fact necessary to establish the guilt of the accused must be proved by competent evidence beyond a reasonable doubt; and the facts and circumstances proved must be consistent with each other, and with the guilt of the accused, and, taken together, must be of a conclusive nature, leading on the whole to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty that the defendant, and no other person, committed the offense charged; and, unless the evidence does so, you will acquit the defendant." We have never held that such a charge as this was defective. By instructing the jury that "the defendant, and no other person, committed the offense charged," this was equivalent to an instruction that the facts and circumstances must be inconsistent and incompatible with the defendant's innocence. Neither in the Jones case, 34 Tex. Crim. Rep., 490, nor in Smith's case, 35 Tex. Crim. Rep., 618, was the jury instructed, in substance, that the facts and circumstances must produce, in effect, a reasonable and moral certainty that the defendant, and no other person, committed the offense. We are not treating a case in which two parties are on trial charged with the same offense. Such a charge as given above might not be applicable to every case, because the defendant may not have actually killed the deceased, but may have been acting as an accomplice for some other person who did the killing. (This by the way to prevent misconstruction.) We are not to be understood as holding that the charge in this case would be correct in all cases. If there was an issue as to whether the deceased was killed by any person, or suicided, and the issue, assuming that a murder had been committed, as to whether the accused was the guilty person, then it would be necessary for the court to instruct the jury that the facts and circumstances relied upon for conviction must be proved by competent evidence, beyond a reasonable doubt, and the facts and circumstances thus proved must be consistent with each other, and with the guilt of the accused, and, taken together, must be of a conclusive nature, leading, on the whole, to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty that

the defendant, and no other person, committed the offense charged, and that they must exclude every reasonable hypothesis save the guilt of the accused.   There was no question in this case in regard to the fact that the murder was committed by somebody.   Suicide is not at all suggested by any of the testimony in the case.   Because of the admission in evidence of the note or letter above indicated, the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*

HENDERSON, Judge, does not sit in this case.